UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MICAH GODFREY,

      Plaintiff,

  v.

TONY ROSS, CITY OF TULELAKE, DAN SILVA, SISKITOU COUNTY, TRAVIS HALL, TERRY HARRIS, LAURA BELLASALMA, UNITED STATES OF AMERICA, ERIN MARTIN and ROSS MARKET,

      Defendants.
_____/

NO. CIV. 2:11-2308 WBS EFB

<u>MEMORANDUM AND ORDER RE: ROSS MARKET'S AND UNITED STATES' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT</u>

----oo0oo----

Plaintiff Micah Godfrey brought this action against defendants Tony Ross, City of Tulelake (the "City"), Dan Silva, Siskiyou County (the "County"), Travis Hall, Terry Harris, Laura Bellasalma, United States of America, Erin Martin,[1] and Ross Market arising out of defendants' allegedly wrongful violation of plaintiff's Fourth, Fifth, and Fourteenth Amendment rights.

---

[1] Plaintiff states that Erin Martin "is also believed to be known as KATIE ROSS." (First Am. Compl. ¶ 13.)

1

Presently before the court is Ross Market's motions to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket No. 40), and the United States of America's motion to dismiss the FAC pursuant to Rule 12(b)(1), (Docket No. 37).

I.   Factual and Procedural Background

On January 21, 2010, plaintiff alleges that he was shopping at Jock's Market when Martin pulled a gun on him. (FAC ¶ 27.) Plaintiff alleges that Martin was angry at him for not shopping at Ross Market, a grocery store owned by Ross, Martin's step-father, and because plaintiff is bisexual, part Native-American, and bipolar. (Id. ¶¶ 28-29.) The FAC states that Martin was employed as a manager at Ross Market. (Id. ¶ 75.) The FAC also states that Ross was the owner of Jock's Market. (Id. ¶ 128.)

On March 11, 2010, plaintiff was arrested at the Lava Beds National Park on gun charges. (Id. ¶ 33.) Plaintiff was subsequently taken to the Tulelake City jail. (Id.)

Plaintiff alleges that while he was held in jail, the individual defendants committed rape, sodomy, sexual assault, assault, and battery against plaintiff. (Id. ¶ 34.) Plaintiff further alleges that he was zapped with a Taser at least 15 times, (id. ¶ 37), he was repeatedly hit in the head with defendants' fists or a club, (id. ¶ 38), that Ross shoved a cattle prod up his anus, (id.), and that Harris pointed a gun at him, (id. ¶ 39). Plaintiff alleges that Ross was motivated to harm him because of plaintiff's prior encounter with Martin, Ross's step-daughter, and because he is bisexual, part Native-

American, a user of medical marijuana, bipolar, and watches television shows that are adverse to authority figures, and that the other defendants knew of this motivation and "joined in." (Id. ¶ 47.)  Plaintiff claims that these actions were in violation of his Fourth, Fifth, and Fourteenth Amendment rights. (Id. ¶¶ 24-26, 50, 51, 53, 55, 62, 63.)

Plaintiff filed his Complaint in this case on August 30, 2011, alleging seven claims for relief.  (Docket No. 2.)  On December 1, 2011, the court granted motions to dismiss the state law tort claims against the City, the County, and Ross, with leave to amend.  (Docket No. 29.)  Plaintiff filed his FAC on December 19, 2011, alleging five remaining claims for relief.[2] Ross Market is named in the fifth claim, assault with a deadly weapon, and is referenced in the seventh claim, violation of California's Unruh Civil Rights Act ("Unruh Act").  (FAC ¶¶ 73-81, 93-104.)  The United States is named in the first and second claims: violation of the Federal Civil Rights Act, 42 U.S.C. § 1983, and a Bivens claim.  (Id. ¶¶ 22-72.)

III. Discussion

    A.   Ross Market's Motion to Dismiss

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v.

---

[2] The original complaint included seven claims for relief.  After the court dismissed the third and fourth claims against the City, the County, and Ross, plaintiff appears to have removed the claims in their entirety.  The numbering of the claims in the FAC, however, remains the same as in the original complaint.

3

Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

        i.    Assault with a Deadly Weapon (Fifth Claim)

Under California law, a principal or employer is liable for the torts of his agent or employee committed while acting within the scope of his employment. Perez v. Van Groningen & Sons, Inc., 41 Cal. 3d 962, 967 (1986); 2 B.E. Witkin, Summary of California Law § 115, at 109 (9th ed. 1987). Respondeat superior includes liability for an employee's intentional tort as well as negligence. Rodgers v. Kemper Constr. Co., 50 Cal. App. 3d 608, 621 (1975) (noting that in California, the same test is used to determine an employer's liability for an employee's intentional tort as to determine his liability for an employee's negligence).

The scope of an agent or employee's employment is "work [the agent or employee] was employed to perform, during his working hours." 2 Witkin, Summary of California Law § 126, at 121. The act need not be committed to further the employer's interest in order to fall within the scope of employment. Lisa M. v. Henry Mayo Newhall Mem'l Hosp., 12 Cal. 4th 291, 297

1  (1995).  However, if the employee's main purpose was the pursuit
2  of his own personal ends, the employer is not liable.  <u>Le Elder</u>
3  <u>v. Rice</u>, 21 Cal. App. 4th 1604, 1607 (4th Dist. 1994).
4       To be within the scope of employment, the employee's
5  act must be required or incident to his duties, or reasonably
6  foreseable by the employer.  <u>Clark Equip. Co. v. Wheat</u>, 92 Cal.
7  3d 503, 520 (1979); <u>see also</u> <u>Lisa M.</u>, 12 Cal. 4th at 297 (the
8  intentional tort must have a "causal nexus" with the employee's
9  work).  Foreseeability "merely means that in the context of the
10 particular enterprise an employee's conduct is not so unusual or
11 startling that it would seem unfair to include the loss resulting
12 from it among other costs of the employer's business."  <u>Lisa M.</u>,
13 12 Cal. 4th at 299 (quoting <u>Rodgers</u>, 50 Cal. App. 3d at 619.
14 Generally, the issue of scope of employment is a question of
15 fact.  <u>Perez</u>, 41 Cal. 3d at 968.  Where the evidence clearly
16 shows a complete abandonment of his employer's business, the
17 court may make the determination that as a matter of law, the
18 employee acted outside the scope of his employment.  <u>Felix v.</u>
19 <u>Asai</u>, 192 Cal. App. 3d 926, 933 (1987).
20      The FAC raises a claim for assault with a deadly weapon
21 against Ross Market for the actions of Martin based on the theory
22 of respondeat superior.  (FAC ¶¶ 73-81.)  Plaintiff alleges that
23 Martin acted "while in the course and scope of her duty, and
24 pursuant to authority granted to her from her position as manager
25 of ROSS MARKET" when she allegedly pulled a gun on plaintiff
26 while he was shopping at Jock's Market.  (<u>Id.</u> ¶ 75.)  Plaintiff
27 does not allege that Martin acted during working hours, that her
28 actions were required by or incident to her duties as an employee

5

of Ross Market, that her actions occurred at Ross Market, or that her actions were reasonably foreseeable as arising from her employment with Ross Market.  Plaintiff instead alleges that Martin acted based on her <u>personal</u> dislike for plaintiff based on the fact that he is part Native-American, bisexual, and bipolar.  (Id. ¶ 78.)

Plaintiff's claim that Martin was acting within the scope of her employment is a legal conclusion, not a factual allegation.  Accepting plaintiff's factual allegations as true, which the court is required to do in a motion to dismiss, plaintiff fails to sufficiently allege that plaintiff was acting in the scope of her employment when she allegedly assaulted plaintiff.  Accordingly, the court will grant Ross Market's motion to dismiss plaintiff's claim for assault with a deadly weapon.[3]

        ii.   <u>Unruh Act Violations (Seventh Claim)</u>

The Unruh Act provides that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51.  "The primary purpose of the Unruh Act is to compel recognition of the equality of all persons in the right to the particular service offered by an organization or entity

---

[3] Because the motion is granted based on plaintiff's insufficient proof of respondeat superior liability, the court need not address whether plaintiff raised facts sufficient to state a claim for punitive damages.

covered by the act." <u>Curran v. Mt. Diablo Council of Boy Scouts</u>, 147 Cal. App. 3d 712, 733 (2d Dist. 1983).

The caption for plaintiff's Unruh Act claim in his FAC states that the claim is brought "[a]s to Defendant Martin/Ross only." (FAC at 23:9-11.) In his opposition to Ross Market's motion to dismiss,[4] plaintiff explains that "[e]ven though the cause of action states that it is against Erin Martin Only, plaintiff intended to include Ross Market in this cause of action under the respondeat superior theory." (Opp'n to Ross Market's Mot. to Dismiss at 15:4-7.) As discussed above, plaintiff fails to state facts sufficient to support a claim against Ross Market based on respondeat superior liability. Accordingly, because plaintiff failed to name Ross Market as a defendant on his Unruh Act claim and because he fails to sufficiently allege respondeat superior liability, the court will grant Ross Market's motion to dismiss plaintiff's Unruh Act claim.

B.   <u>United States' Motion to Dismiss</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek the dismissal of an action from federal court for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. <u>Tosco Corp. v. Cmtys. For a Better Env't</u>, 236 F.3d 495, 499 (9th Cir. 2001). "A plaintiff suing in a federal court must

---

[4] Even though Ross Market was not named as a defendant in plaintiff's seventh claim for relief, Ross Market moved to dismiss plaintiff's Unruh Act claim "on a precautionary basis due to the ambiguity in the pleading." (Ross Market's Mot. to Dismiss at 6:16.)

7

show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." Id. (quoting Smith v. McCullough, 270 U.S. 456, 459 (1926)).

"Federal courts are courts of limited jurisdiction" and possess only the power to adjudicate cases that the Constitution and federal statutes permit. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Stock W., Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted).

"In order for a plaintiff to bring a viable suit against the federal government or its agencies, the government must have waived its sovereign immunity." Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. King, 395 U.S. 1, 4 (1969)). "Consequently, a person attempting to sue a federal agency or officer must demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States." Weber, 521 F.3d at 1061 (quoting 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3655 (3d ed. 1998)). "Absent a waiver of sovereign immunity, courts have no subject matter jurisdiction over cases

against the government." Kaiser v. Blue Cross of Cal., 347 F.3d 1107, 1117 (9th Cir. 2003) (citing Mitchell, 463 U.S. at 212).

   i. Sovereign Immunity to § 1983 Claim (First Claim)

   Section 1983 provides legal or equitable recourse to persons who have been deprived of their constitutional rights by the actions of another person acting under color of law.  42 U.S.C. § 1983 (emphasis added).  The United States is not a "person" within the meaning of § 1983's provisions.  Jachetta v. United States, 653 F.3d 898, 908 (9th Cir. 2011); Accardi v. United States, 435 F.2d 1239, 1241 (3d Cir. 1970) ("The United States and other governmental entities are not 'persons' within the meaning of Section 1983.").  There is therefore no evidence that Congress intended to waive sovereign immunity for § 1983 claims brought against the United States.  See Jachetta, 653 F.3d at 908; Dry v. United States, 235 F.3d 1249, 1255 (10th Cir. 2000) (holding that § 1983 claims are "applicable only to actions by state and local entities, not by the federal government"); Johnson v. Williams, 699 F. Supp. 2d 159, 165-66 (D.D.C. 2010).

   Plaintiff argues that the United States waived its sovereign immunity to suit when it signed the United Nations International Covenant on Civil and Political Rights ("ICCPR") in 1992 and that the United States is therefore judicially estopped from claiming sovereign immunity.  The ICCPR contains no explicit language waiving the sovereign immunity of the United States, instead, the treaty contains general statements affirming the rights of individuals to live free from discrimination and oppression.  (Opp'n to USA's Mot. to Dismiss Ex. B.)

   "[A] waiver of sovereign immunity is to be strictly

construed, in terms of its scope, in favor of the sovereign. Such a waiver must also be 'unequivocally expressed' in the statutory test." Dept. of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999). "In the absence of specific language in the treaty waiving the sovereign immunity of the United States, the treaty must be interpreted in accord with the rule that the treaty violations are normally to be redressed outside the courtroom." Canadian Transp. Co. v. United States, 663 F.2d 1081, 1092 (D.C. Cir. 1980). The ICCPR does not explicitly waive the sovereign immunity of the United States, nor does it confer standing to individuals to directly raise claims under the treaty. See Dickens v. Lewis, 750 F.2d 1251, 1253-54 (5th Cir. 1984) (finding that the ICCPR did not confer standing to individual plaintiffs).

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Davis v. Wakelee, 156 U.S. 680, 689 (1895). "This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)). A court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general consideration[s] of the orderly administration of

justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts."  Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990).  The United States has not taken any contrary positions regarding its sovereign immunity in this litigation.  Thus, it is not judicially estopped from raising its sovereign immunity as an affirmative defense in this case.  Accordingly, the court will grant the United States' motion to dismiss plaintiff's § 1983 claim.

          ii.   Sovereign Immunity to Bivens Claim (Second Claim)

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent while acting under the color of his federal authority gives rise to a cause of action for damages.  Id. at 397.  The Court reasoned that, while the Fourth Amendment does not explicitly provide a cause of action for damages resulting from unconstitutional conduct, it is well settled that when "legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."  Id. at 396 (citing Bell v. Hood, 327 U.S. 678, 684 (1946)).  The court subsequently extended the Bivens cause of action to apply to violations of the Fifth Amendment as well.  Davis v. Passman, 442 U.S. 228, 248 (1979).

"In a suit against the United States, there cannot be a right to money damages without waiver of sovereign immunity . . . ."  United States v. Testan, 424 U.S. 392, 400 (1976).  Bivens "does not provide a means of cutting through the sovereign

11

1  immunity of the United States itself." Arnsberg v. United
2  States, 757 F.2d 971, 980 (9th Cir. 1984); see also Pereira v.
3  U.S. Postal Serv., 964 F.2d 873, 876 (9th Cir. 1992); Clemente v.
4  United States, 766 F.2d 1358, 1363 (9th Cir. 1985) ("We cannot
5  accept . . . that Bivens . . . logically compel[s] the United
6  States to be held liable in damages for the constitutional torts
7  of its officers."). As discussed above, the ICCPR does not
8  function as a waiver of the sovereign immunity of the United
9  States. Accordingly, the court will grant the United States'
10 motion to dismiss plaintiff's Bivens claim.

11         IT IS THEREFORE ORDERED that Ross Market's motion to
12 dismiss plaintiff's claims for assault with a deadly weapon
13 (claim five) and violations of the Unruh Act (claim seven) be,
14 and the same hereby is, GRANTED; and the United States of
15 America's motion to dismiss plaintiff's claim for violations of
16 the Federal Civil Rights Act (claim one) and Bivens claim (claim
17 two) be, and the same hereby is, GRANTED.[5]

18         Plaintiff has twenty days from the date of this Order
19 to file an amended complaint, if he can do so consistent with
20 this Order.

21 DATED: February 13, 2012

                              WILLIAM B. SHUBB
                              UNITED STATES DISTRICT JUDGE

---

[5] In opposition to Ross Market's and the United States' motions to dismiss, plaintiff requests leave to amend the FAC to join an additional party and reinstate two causes of action that were "inadvertently" dropped in the FAC. If plaintiff wishes to amend the FAC, he may file and properly notice a motion to amend, which the court will evaluate pursuant to Rule 16's good cause standard.

12