UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MICAH GODFREY,                              NO. CIV. 2:11-2308 WBS EFB

       Plaintiff,

     v.                                    MEMORANDUM AND ORDER RE: ROSS
                                           MARKET'S AND UNITED STATES'
TONY ROSS, CITY OF TULELAKE,               MOTIONS TO DISMISS FIRST
DAN SILVA, SISKITOU COUNTY,                AMENDED COMPLAINT
TRAVIS HALL, TERRY HARRIS,
LAURA BELLASALMA, UNITED
STATES OF AMERICA, ERIN MARTIN
and ROSS MARKET,

       Defendants.
_____/

----oo0oo----

     Plaintiff Micah Godfrey brought this action against

defendants Tony Ross, City of Tulelake (the "City"), Dan Silva,

Siskiyou County (the "County"), Travis Hall, Terry Harris, Laura

Bellasalma, United States of America, Erin Martin,[1] and Ross

Market arising out of defendants' allegedly wrongful violation of

plaintiff's Fourth, Fifth, and Fourteenth Amendment rights.

---

     [1]   Plaintiff states that Erin Martin "is also believed to
be known as KATIE ROSS."  (First Am. Compl. ¶ 13.)

Presently before the court is Ross Market's motions to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket No. 40), and the United States of America's motion to dismiss the FAC pursuant to Rule 12(b)(1), (Docket No. 37).

I.   Factual and Procedural Background

On January 21, 2010, plaintiff alleges that he was shopping at Jock's Market when Martin pulled a gun on him. (FAC ¶ 27.)  Plaintiff alleges that Martin was angry at him for not shopping at Ross Market, a grocery store owned by Ross, Martin's step-father, and because plaintiff is bisexual, part Native-American, and bipolar. (Id. ¶¶ 28-29.)  The FAC states that Martin was employed as a manager at Ross Market. (Id. ¶ 75.) The FAC also states that Ross was the owner of Jock's Market. (Id. ¶ 128.)

On March 11, 2010, plaintiff was arrested at the Lava Beds National Park on gun charges. (Id. ¶ 33.)  Plaintiff was subsequently taken to the Tulelake City jail. (Id.)

Plaintiff alleges that while he was held in jail, the individual defendants committed rape, sodomy, sexual assault, assault, and battery against plaintiff. (Id. ¶ 34.)  Plaintiff further alleges that he was zapped with a Taser at least 15 times, (id. ¶ 37), he was repeatedly hit in the head with defendants' fists or a club, (id. ¶ 38), that  Ross shoved a cattle prod up his anus, (id.), and that Harris pointed a gun at him, (id. ¶ 39).  Plaintiff alleges that Ross was motivated to harm him because of plaintiff's prior encounter with Martin, Ross's step-daughter, and because he is bisexual, part Native-

2

1  American, a user of medical marijuana, bipolar, and watches

2  television shows that are adverse to authority figures, and that

3  the other defendants knew of this motivation and "joined in."

4  (Id. ¶ 47.)  Plaintiff claims that these actions were in

5  violation of his Fourth, Fifth, and Fourteenth Amendment rights.

6  (Id. ¶¶ 24-26, 50, 51, 53, 55, 62, 63.)

7        Plaintiff filed his Complaint in this case on August

8  30, 2011, alleging seven claims for relief.  (Docket No. 2.)  On

9  December 1, 2011, the court granted motions to dismiss the state

10 law tort claims against the City, the County, and Ross, with

11 leave to amend.  (Docket No. 29.)  Plaintiff filed his FAC on

12 December 19, 2011, alleging five remaining claims for relief.[2]

13 Ross Market is named in the fifth claim, assault with a deadly

14 weapon, and is referenced in the seventh claim, violation of

15 California's Unruh Civil Rights Act ("Unruh Act").  (FAC ¶¶ 73-

16 81, 93-104.)  The United States is named in the first and second

17 claims: violation of the Federal Civil Rights Act, 42 U.S.C.

18 § 1983, and a Bivens claim.  (Id. ¶¶ 22-72.)

19 III. Discussion

20      A.   Ross Market's Motion to Dismiss

21        On a motion to dismiss, the court must accept the

22 allegations in the complaint as true and draw all reasonable

23 inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

24 U.S. 232, 236 (1974), overruled on other grounds by Davis v.

25 _____

26      [2]    The original complaint included seven claims for
   relief.  After the court dismissed the third and fourth claims
   against the City, the County, and Ross, plaintiff appears to have
27 removed the claims in their entirety.  The numbering of the
   claims in the FAC, however, remains the same as in the original
28 complaint.

1  <u>Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322

2  (1972).  To survive a motion to dismiss, a plaintiff must plead

3  "only enough facts to state a claim to relief that is plausible

4  on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570

5  (2007).  This "plausibility standard," however, "asks for more

6  than a sheer possibility that a defendant has acted unlawfully,"

7  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949

8  (2009), and "[w]here a complaint pleads facts that are 'merely

9  consistent with' a defendant's liability, it 'stops short of the

10  line between possibility and plausibility of entitlement to

11  relief.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).

12                    i.    <u>Assault with a Deadly Weapon (Fifth Claim)</u>

13            Under California law, a principal or employer is liable

14  for the torts of his agent or employee committed while acting

15  within the scope of his employment.  <u>Perez v. Van Groningen &</u>

16  <u>Sons, Inc.</u>, 41 Cal. 3d 962, 967 (1986); 2 B.E. Witkin, <u>Summary of</u>

17  <u>California Law</u> § 115, at 109 (9th ed. 1987).  Respondeat superior

18  includes liability for an employee's intentional tort as well as

19  negligence.  <u>Rodgers v. Kemper Constr. Co.</u>, 50 Cal. App. 3d 608,

20  621 (1975) (noting that in California, the same test is used to

21  determine an employer's liability for an employee's intentional

22  tort as to determine his liability for an employee's negligence).

23            The scope of an agent or employee's employment is "work

24  [the agent or employee] was employed to perform, during his

25  working hours."  2 Witkin, <u>Summary of California Law</u> § 126, at

26  121.  The act need not be committed to further the employer's

27  interest in order to fall within the scope of employment.  <u>Lisa</u>

28  <u>M. v. Henry Mayo Newhall Mem'l Hosp.</u>, 12 Cal. 4th 291, 297

                                    4

1   (1995).  However, if the employee's main purpose was the pursuit

2   of his own personal ends, the employer is not liable.  Le Elder

3   v. Rice, 21 Cal. App. 4th 1604, 1607 (4th Dist. 1994).

4         To be within the scope of employment, the employee's

5   act must be required or incident to his duties, or reasonably

6   foreseeable by the employer.  Clark Equip. Co. v. Wheat, 92 Cal.

7   3d 503, 520 (1979); see also Lisa M., 12 Cal. 4th at 297 (the

8   intentional tort must have a "causal nexus" with the employee's

9   work).  Foreseeability "merely means that in the context of the

10  particular enterprise an employee's conduct is not so unusual or

11  startling that it would seem unfair to include the loss resulting

12  from it among other costs of the employer's business."  Lisa M.,

13  12 Cal. 4th at 299 (quoting Rodgers, 50 Cal. App. 3d at 619.

14  Generally, the issue of scope of employment is a question of

15  fact.  Perez, 41 Cal. 3d at 968.  Where the evidence clearly

16  shows a complete abandonment of his employer's business, the

17  court may make the determination that as a matter of law, the

18  employee acted outside the scope of his employment.  Felix v.

19  Asai, 192 Cal. App. 3d 926, 933 (1987).

20        The FAC raises a claim for assault with a deadly weapon

21  against Ross Market for the actions of Martin based on the theory

22  of respondeat superior.  (FAC ¶¶ 73-81.)  Plaintiff alleges that

23  Martin acted "while in the course and scope of her duty, and

24  pursuant to authority granted to her from her position as manager

25  of ROSS MARKET" when she allegedly pulled a gun on plaintiff

26  while he was shopping at Jock's Market.  (Id. ¶ 75.)  Plaintiff

27  does not allege that Martin acted during working hours, that her

28  actions were required by or incident to her duties as an employee

of Ross Market, that her actions occurred at Ross Market, or that
her actions were reasonably foreseeable as arising from her
employment with Ross Market.  Plaintiff instead alleges that
Martin acted based on her <u>personal</u> dislike for plaintiff based on
the fact that he is part Native-American, bisexual, and bipolar.
(<u>Id.</u> ¶ 78.)

        Plaintiff's claim that Martin was acting within the
scope of her employment is a legal conclusion, not a factual
allegation.  Accepting plaintiff's factual allegations as true,
which the court is required to do in a motion to dismiss,
plaintiff fails to sufficiently allege that plaintiff was acting
in the scope of her employment when she allegedly assaulted
plaintiff.  Accordingly, the court will grant Ross Market's
motion to dismiss plaintiff's claim for assault with a deadly
weapon.[3]

        ii.  <u>Unruh Act Violations (Seventh Claim)</u>

        The Unruh Act provides that:

        All persons within the jurisdiction of this state are
        free and equal, and no matter what their sex, race,
        color, religion, ancestry, national origin, disability,
        medical condition, genetic information, marital status,
        or sexual orientation are entitled to the full and equal
        accommodations, advantages, facilities, privileges, or
        services in all business establishments of every kind
        whatsoever.

Cal. Civ. Code § 51.  "The primary purpose of the Unruh Act is to
compel recognition of the equality of all persons in the right to
the particular service offered by an organization or entity

---

        [3]     Because the motion is granted based on plaintiff's
insufficient proof of respondeat superior liability, the court
need not address whether plaintiff raised facts sufficient to
state a claim for punitive damages.

covered by the act." <u>Curran v. Mt. Diablo Council of Boy Scouts</u>, 147 Cal. App. 3d 712, 733 (2d Dist. 1983).

The caption for plaintiff's Unruh Act claim in his FAC states that the claim is brought "[a]s to Defendant Martin/Ross only." (FAC at 23:9-11.) In his opposition to Ross Market's motion to dismiss,[4] plaintiff explains that "[e]ven though the cause of action states that it is against Erin Martin Only, plaintiff intended to include Ross Market in this cause of action under the respondeat superior theory." (Opp'n to Ross Market's Mot. to Dismiss at 15:4-7.) As discussed above, plaintiff fails to state facts sufficient to support a claim against Ross Market based on respondeat superior liability. Accordingly, because plaintiff failed to name Ross Market as a defendant on his Unruh Act claim and because he fails to sufficiently allege respondeat superior liability, the court will grant Ross Market's motion to dismiss plaintiff's Unruh Act claim.

B.   <u>United States' Motion to Dismiss</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek the dismissal of an action from federal court for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. <u>Tosco Corp. v. Cmtys. For a Better Env't</u>, 236 F.3d 495, 499 (9th Cir. 2001). "A plaintiff suing in a federal court must

_____

[4]   Even though Ross Market was not named as a defendant in plaintiff's seventh claim for relief, Ross Market moved to dismiss plaintiff's Unruh Act claim "on a precautionary basis due to the ambiguity in the pleading." (Ross Market's Mot. to Dismiss at 6:16.)

1  show in his pleading, affirmatively and distinctly, the existence

2  of whatever is essential to federal jurisdiction, and, if he does

3  not do so, the court, on having the defect called to its

4  attention or on discovering the same, must dismiss the case,

5  unless the defect be corrected by amendment." Id. (quoting Smith

6  v. McCullough, 270 U.S. 456, 459 (1926)).

7        "Federal courts are courts of limited jurisdiction" and

8  possess only the power to adjudicate cases that the Constitution

9  and federal statutes permit. Kokkonen v. Guardian Life Ins. Co.

10  of Am., 511 U.S. 375, 377 (1994). "A federal court is presumed

11  to lack jurisdiction in a particular case unless the contrary

12  affirmatively appears." Stock W., Inc. v. Confederated Tribes of

13  the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989)

14  (citation omitted).

15        "In order for a plaintiff to bring a viable suit

16  against the federal government or its agencies, the government

17  must have waived its sovereign immunity." Weber v. Dep't of

18  Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A waiver

19  of sovereign immunity 'cannot be implied but must be

20  unequivocally expressed.'" United States v. Mitchell, 445 U.S.

21  535, 538 (1980) (quoting United States v. King, 395 U.S. 1, 4

22  (1969)). "Consequently, a person attempting to sue a federal

23  agency or officer must demonstrate that the claim being asserted

24  is covered by a specific statutory authorization to sue the

25  United States." Weber, 521 F.3d at 1061 (quoting 14 Charles Alan

26  Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and

27  Procedure § 3655 (3d ed. 1998)). "Absent a waiver of sovereign

28  immunity, courts have no subject matter jurisdiction over cases

8

against the government."  <u>Kaiser v. Blue Cross of Cal.</u>, 347 F.3d

1107, 1117 (9th Cir. 2003) (citing <u>Mitchell</u>, 463 U.S. at 212).

i.   <u>Sovereign Immunity to § 1983 Claim (First Claim)</u>

Section 1983 provides legal or equitable recourse to

persons who have been deprived of their constitutional rights by

the actions of another <u>person</u> acting under color of law.  42

U.S.C. § 1983 (emphasis added).  The United States is not a

"person" within the meaning of § 1983's provisions.  <u>Jachetta v.</u>

<u>United States</u>, 653 F.3d 898, 908 (9th Cir. 2011); <u>Accardi v.</u>

<u>United States</u>, 435 F.2d 1239, 1241 (3d Cir. 1970) ("The United

States and other governmental entities are not 'persons' within

the meaning of Section 1983.").  There is therefore no evidence

that Congress intended to waive sovereign immunity for § 1983

claims brought against the United States.  <u>See</u> <u>Jachetta</u>, 653 F.3d

at 908; <u>Dry v. United States</u>, 235 F.3d 1249, 1255 (10th Cir.

2000) (holding that § 1983 claims are "applicable only to actions

by state and local entities, not by the federal government");

<u>Johnson v. Williams</u>, 699 F. Supp. 2d 159, 165-66 (D.D.C. 2010).

Plaintiff argues that the United States waived its

sovereign immunity to suit when it signed the United Nations

International Covenant on Civil and Political Rights ("ICCPR") in

1992 and that the United States is therefore judicially estopped

from claiming sovereign immunity.  The ICCPR contains no explicit

language waiving the sovereign immunity of the United States,

instead, the treaty contains general statements affirming the

rights of individuals to live free from discrimination and

oppression.  (Opp'n to USA's Mot. to Dismiss Ex. B.)

"[A] waiver of sovereign immunity is to be strictly

9

1  construed, in terms of its scope, in favor of the sovereign.

2  Such a waiver must also be 'unequivocally expressed' in the

3  statutory test." <u>Dept. of the Army v. Blue Fox, Inc.</u>, 525 U.S.

4  255, 261 (1999).  "In the absence of specific language in the

5  treaty waiving the sovereign immunity of the United States, the

6  treaty must be interpreted in accord with the rule that the

7  treaty violations are normally to be redressed outside the

8  courtroom." <u>Canadian Transp. Co. v. United States</u>, 663 F.2d

9  1081, 1092 (D.C. Cir. 1980).  The ICCPR does not explicitly waive

10 the sovereign immunity of the United States, nor does it confer

11 standing to individuals to directly raise claims under the

12 treaty.  <u>See</u> <u>Dickens v. Lewis</u>, 750 F.2d 1251, 1253-54 (5th Cir.

13 1984) (finding that the ICCPR did not confer standing to

14 individual plaintiffs).

15         "[W]here a party assumes a certain position in a legal

16 proceeding, and succeeds in maintaining that position, he may not

17 thereafter, simply because his interests have changed, assume a

18 contrary position, especially if it be to the prejudice of the

19 party who has acquiesced in the position formerly taken by him."

20 <u>Davis v. Wakelee</u>, 156 U.S. 680, 689 (1895).  "This rule, known as

21 judicial estoppel, 'generally prevents a party from prevailing in

22 one phase of a case on an argument and then relying on a

23 contradictory argument to prevail in another phase.'" <u>New</u>

24 <u>Hampshire v. Maine</u>, 532 U.S. 742, 749 (2001) (quoting <u>Pegram v.</u>

25 <u>Herdrich</u>, 530 U.S. 211, 227 n.8 (2000)).  A court invokes

26 judicial estoppel not only to prevent a party from gaining an

27 advantage by taking inconsistent positions, but also because of

28 "general consideration[s] of the orderly administration of

1  justice and regard for the dignity of judicial proceedings," and
2  to "protect against a litigant playing fast and loose with the
3  courts." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990).
4  The United States has not taken any contrary positions regarding
5  its sovereign immunity in this litigation.  Thus, it is not
6  judicially estopped from raising its sovereign immunity as an
7  affirmative defense in this case.  Accordingly, the court will
8  grant the United States' motion to dismiss plaintiff's § 1983
9  claim.

10         ii.   Sovereign Immunity to Bivens Claim (Second Claim)
11         In Bivens v. Six Unknown Named Agents of Federal Bureau
12  of Narcotics, 403 U.S. 388 (1971), the Supreme Court held that a
13  violation of the Fourth Amendment by a federal agent while acting
14  under the color of his federal authority gives rise to a cause of
15  action for damages.  Id. at 397.  The Court reasoned that, while
16  the Fourth Amendment does not explicitly provide a cause of
17  action for damages resulting from unconstitutional conduct, it is
18  well settled that when "legal rights have been invaded, and a
19  federal statute provides for a general right to sue for such
20  invasion, federal courts may use any available remedy to make
21  good the wrong done." Id. at 396 (citing Bell v. Hood, 327 U.S.
22  678, 684 (1946)).  The court subsequently extended the Bivens
23  cause of action to apply to violations of the Fifth Amendment as
24  well.  Davis v. Passman, 442 U.S. 228, 248 (1979).

25         "In a suit against the United States, there cannot be a
26  right to money damages without waiver of sovereign immunity . . .
27  ." United States v. Testan, 424 U.S. 392, 400 (1976).  Bivens
28  "does not provide a means of cutting through the sovereign

immunity of the United States itself." <u>Arnsberg v. United States</u>, 757 F.2d 971, 980 (9th Cir. 1984); <u>see also</u> <u>Pereira v. U.S. Postal Serv.</u>, 964 F.2d 873, 876 (9th Cir. 1992); <u>Clemente v. United States</u>, 766 F.2d 1358, 1363 (9th Cir. 1985) ("We cannot accept . . . that <u>Bivens</u> . . . logically compel[s] the United States to be held liable in damages for the constitutional torts of its officers."). As discussed above, the ICCPR does not function as a waiver of the sovereign immunity of the United States. Accordingly, the court will grant the United States' motion to dismiss plaintiff's <u>Bivens</u> claim.

IT IS THEREFORE ORDERED that Ross Market's motion to dismiss plaintiff's claims for assault with a deadly weapon (claim five) and violations of the Unruh Act (claim seven) be, and the same hereby is, GRANTED; and the United States of America's motion to dismiss plaintiff's claim for violations of the Federal Civil Rights Act (claim one) and <u>Bivens</u> claim (claim two) be, and the same hereby is, GRANTED.[5]

Plaintiff has twenty days from the date of this Order to file an amended complaint, if he can do so consistent with this Order.

DATED: February 13, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

_____

[5]     In opposition to Ross Market's and the United States' motions to dismiss, plaintiff requests leave to amend the FAC to join an additional party and reinstate two causes of action that were "inadvertently" dropped in the FAC. If plaintiff wishes to amend the FAC, he may file and properly notice a motion to amend, which the court will evaluate pursuant to Rule 16's good cause standard.

12